[Cite as *State v. Kovach*, 2023-Ohio-1085.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2022-G-0027** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| STACEY KOVACH, | |
| Defendant-Appellant. | Trial Court No. 2018 C 000136 |

**O P I N I O N**

Decided: March 31, 2023
Judgment: Affirmed

*James R. Flaiz*, Geauga County Prosecutor, and *Nicholas A. Burling*, Assistant Prosecutor, Courthouse Annex, 231 Main Street, 3rd Floor, Chardon, OH 44024 (For Plaintiff-Appellee).

*Christopher P. Lacich*, Roth Blair Roberts Strasfield & Lodge, 100 East Federal Street, Suite 600, Youngstown, OH 44503 (For Defendant-Appellant).

JOHN J. EKLUND, P.J.

{¶1} On September 28, 2018, the Geauga County Grand Jury indicted Appellant, Stacey Kovach, on one count of Tampering with Records, a third-degree felony, in violation of R.C. 2913.42(A)(1)(B)(4), and three counts of Forgery, fifth-degree felonies, in violation of R.C. 2913.31(A)(2) and (3). A jury tried and found Appellant guilty on all counts. She now appeals those convictions. For the following reasons, we affirm the judgment of the Geauga County Court of Common Pleas.

## Procedural History

{¶2}    At arraignment on October 1, 2018, Attorney Haffey represented Appellant and she plead not guilty.  In November 2018, Appellant filed a motion to suppress and the court held a suppression hearing.  On December 31, 2018, the court denied her motion.  Over the ensuing two and a half years, the court continued various phases of the proceedings fourteen times on Appellant's motion or due to circumstances affecting her ability to participate.

{¶3}    The court scheduled a jury trial to commence on April 1, 2019.  On February 28, 2019, Appellant moved to continue.  The court granted the motion and scheduled the trial to be heard on May 20, 2019.  On May 3, 2019, Appellant moved to continue and the court granted the motion.  On July 26, 2019, the state moved to continue to accommodate a witnesses' availability.  The court granted the motion.  On September 10, 2019, Appellant moved to continue and the court granted the motion.[1]  On January 8, 2020, the court learned that Attorney Haffey passed away.  That day, the court ordered Appellant to notify it of whether or not she would be retaining new counsel.  Appellant advised the court that she planned to meet with a new attorney on February 2, 2020.  On February 19, 2020, Appellant filed a pro se motion to continue.  The court denied her motion.  On February 27, 2020, the court held a trial management conference to discuss Appellant's representation after her attorney died.  The court explained to Appellant that her charges were serious, relayed that she may qualify for a public defender, and advised that "I'm strongly advising you not to be pro se."

---

1. Appellant's attorney advised the court on September 17, 2019, that he was recently diagnosed with cancer and would not be able to return to work until January 2020.

Case No. 2022-G-0027

{¶4} The court then appointed her a public defender, but told her that she would eventually have to complete paperwork to prove she qualified for appointed counsel. Appellant never submitted the paperwork to the public defender's office. On March 6, 2020, the public defender moved to continue and requested a status conference to determine if Appellant qualified for appointed counsel. On April 6, 2020, the court continued all hearings due to the COVID-19 pandemic. On August 28, 2020, the court held a status conference to determine whether or not Appellant qualified for appointed counsel. The court again reiterated, "I very much do not want you to go through this unrepresented. It's a very risky proposition for a Defendant who doesn't have a legal background and training in order to conduct a jury trial. It puts you at a great disadvantage." The court determined that she did not qualify to have a public defender appointed for her, but the court found her "marginally indigent" and stated that the circumstances warranted appointing her an attorney because she had difficulty retaining private counsel. The court appointed Attorney Luskin to represent her.

{¶5} On September 4, 2020, the court, on its own motion, ordered Appellant to undergo a competency evaluation to determine whether or not she was competent to stand trial. The court scheduled a competency hearing for December 8, 2020. On December 3, 2020, and January 2, 2021, Appellant moved to continue the competency hearing. The court granted both motions. On January 8, 2021, Appellant retained Attorney Coyne as counsel, and the court withdrew Attorney Luskin's appointment. Between January and June 2021, the court rescheduled the competency hearing five more times because Appellant frequently left the state for medical treatment. In May 2021, Attorney Coyne withdrew as counsel and, on June 1, 2021, the court appointed

3

Attorney Hinton to represent Appellant. The next day, Appellant filed a notice of appearance stating that she would be representing herself.

{¶6} On July 6, 2021, the court held a competency hearing. The court asked Attorney Hinton to attend the hearing and advised Appellant that she could consult with him. At the competency hearing, Attorney Hinton, at Appellant's request, moved the court to continue the hearing. Appellant explained that she had fallen two days prior, had six stitches, had an iron deficiency, and had been taking medication. The court denied Appellant's motion and proceeded with the hearing. The court found Appellant competent to stand trial. The court did not order Attorney Hinton to return for trial.

{¶7} On August 3, 2021, the court held a trial management conference. The court again told Appellant, "[w]ell again, probably for the tenth time: you would be so much better served if you had an attorney representing you in this. And once again, I want to emphasize to you the potential penalties you face with these types of felonies, third degree felonies, fifth degree felonies, is serious business. Could result in imprisonment. And it is a very difficult task for a layperson to take on." Appellant replied, "[o]h sure. I'm looking."

{¶8} The court scheduled the trial to begin on August 16, 2021. The State moved to allow deposition testimony for one witness who would be unavailable to testify in person. Appellant opposed the motion. The court rescheduled the trial to September 27, 2021, and scheduled a case management conference for September 15, 2021 to resolve the procedural dispute. On the morning of the case management conference, Appellant notified the court that she would not make an appearance because she had tested positive for COVID-19. The court rescheduled the conference for September 24, 2021.

4

On the morning of the rescheduled conference, Appellant notified the court that she would not make an appearance because she had left town for surgery, which she claimed was scheduled on September 27, 2021 (the scheduled trial date). Appellant attached a doctor's letter to the notice, which stated that the surgery had already been performed on September 10, 2021. The court issued a capias warrant for Appellant's arrest. She was arrested on December 23, 2021.

{¶9} The court scheduled the trial to begin January 31, 2022, and ordered a public defender to appear as standby counsel. On January 19, 2022, the court held a trial management conference. The court told Appellant, "You do realize we're not going to retry your foreclosure case. You are not going to be allowed to put on any evidence that you think that case was incorrectly decided or the evidence that got into that you don't like. * * * This case is strictly about the charges of you tampering with records and three different counts of forgery." Appellant stated that she did not want to represent herself. The court reminded her that "[w]ell, you would not even complete the paperwork information that the public defender's office needed when we tried to see if we could get them on your behalf. You never did it, so they never could reach a decision." The court also told Appellant that if she hired an attorney before trial, it "certainly would entertain a request to give you more time for that attorney to prepare." Appellant did not hire an attorney before trial began. On January 28, 2022, Appellant moved to continue the trial. The court denied her motion.

{¶10} On January 31, 2022, the trial court held a jury trial. Before the trial began, Appellant moved to continue, claiming that she had removed the case to federal court and that it had accepted jurisdiction. The trial court asked Appellant for proof, but she

5

provided nothing to confirm her assertion. Appellant then stated that "I do not want to represent myself. I'm not gonna represent myself. I have the right to the fifth amendment. And in addition to that I did everything I could." Appellant then explained her attempts to find an attorney to represent her. The trial court responded, "I've heard enough. I'm not giving you a continuance because you don't have an attorney." The trial proceeded and the jury found Appellant guilty on all counts.

{¶11} On March 9, 2022, the court held a sentencing hearing. The court was not provided with a pre-sentence investigation ("PSI") because Appellant had not yet completed it. The court, with the state's permission, proceeded with sentencing. The court sentenced Appellant to a twelve-month sentence and a thirty-month sentence, to be served concurrently.

{¶12} Appellant timely appeals and raises four assignments of error.

## Assignments of Error and Analysis

{¶13} First assignment of error: The trial court committed error and abused its discretion when it denied Appellant's request for a continuance of her competency hearing due to a medical condition, and then allowed her to represent herself without proper waiver and/or allowed hybrid representation at said hearing.

{¶14} "'The grant or denial of a continuance is a matter [that] is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion.'" *State v. Jones*, 91 Ohio St.3d 335, 342, 744 N.E.2d 1163 (2001), quoting *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). In evaluating a court's denying a motion to continue, "[s]everal factors can be considered: the length of delay requested, prior continuances,

6

Case No. 2022-G-0027

inconvenience, the reasons for the delay, whether the defendant contributed to the delay, and other relevant factors." *State v. Landrum*, 53 Ohio St.3d 115, 559 N.E.2d 710 (1990).

{¶15} Appellant asserts that the "potential prejudice to [her] * * * far outweighed the need for a docket control decision to go forward with the competency hearing with the circumstances presented on July 6, 2021." Looking to the factors for denying a motion to continue, the record does not demonstrate that the court abused its discretion in denying Appellant's motion. The length of the delay shows that the court first ordered the competency hearing to be heard on December 8, 2020. Because of Appellant's own motions to continue, the competency hearing had been rescheduled seven times and was not heard until six months after the original hearing date. Appellant did not demonstrate to the court that her alleged injuries had rendered her unable to proceed with the hearing, she only made the motion at the hearing and not prior, and the court appointed stand-by counsel for Appellant to consult with if needed. Appellant fails to demonstrate how the court's denying her motion to continue prejudiced her and we cannot find that the court abused its discretion.

{¶16} Appellant next argues that the trial court allowed "prohibited hybrid representation" when Attorney Hinton moved to continue the competency hearing.

{¶17} After a defendant validly waives the right to counsel, a trial court is "permitted to appoint standby counsel to assist the otherwise pro se defendant." *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 28. When a court appoints standby counsel, there are limits on how actively standby counsel can be involved. *Id.* at ¶ 33. Hybrid representation creates confusion as to who is the ultimate decision-maker and raises serious questions about whether the defendant is representing

7

himself or is represented by counsel, because there is no clear boundary line between hybrid representation and self-representation. *Id.* at ¶ 34-35.

{¶18} At the competency hearing, the court stated that Attorney Hinton appeared as standby counsel and would be available only to consult with Appellant. Attorney Hinton told the court that Appellant wished to move to continue. That, in no way, created confusion as to who was the ultimate decision maker. After explaining that she requested Attorney Hinton move to continue on her behalf, Appellant then explained her reasons why the court should grant the motion. Attorney Hinton's moving on Appellant's behalf did not create hybrid representation because the court, who was the sole factfinder at the competency hearing, knew that Appellant was representing herself and that Attorney Hinton was not representing her.

{¶19} Appellant next asserts that "a review of the trial docket in this matter does not seem to indicate a written waiver of counsel by Appellant so that she could proceed pro se at any time." Appellant's assertion is incorrect. On June 2, 2021, one month before the competency hearing, Appellant filed a pro se notice of appearance, notifying the trial court that she wanted Attorney Hinton "removed" and that she would be representing herself.

{¶20} Finally, Appellant asserts under this assignment that her competency evaluation was "unreliable" because it was conducted seven months before the competency hearing. Appellant does not articulate, nor does the record reflect, that there was any change in her mental condition during those seven months.

{¶21} Appellant's first assignment of error is without merit.

8

{¶22} Second assignment of error: The trial court committed error and abused its discretion when it denied Appellant's request for a continuance of her trial, allowed her to represent herself at trial without proper waiver, and then failed to declare a mistrial sua sponte, when it became apparent that Appellant was incapable of pro se representation during trial due to competency and/or mental health issues.

{¶23} Within her assignment of error, Appellant states that the court abused its discretion when it denied her request to continue the trial. Appellant does not provide us with any argument in support of this contention and we decline to form one on her behalf.

{¶24} Appellant asserts that "[t]he trial court failed also to conduct a valid colloquy of the Appellant prior to the trial's commencement to ascertain if she understood all the consequences of proceeding pro se." We find that the court did conduct a valid colloquy.

{¶25} We conduct a de novo review to determine, based on the totality of the circumstances, whether a defendant voluntarily, knowingly, and intelligently waived her right to counsel. *State v. Perdue*, 2d Dist. Montgomery No. 23151, 2010-Ohio-565, ¶ 43.

{¶26} "The Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *Gibson* at paragraph two of the syllabus. "Absent a knowing and

9

intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *State v. Wellman*, 37 Ohio St.2d 162, 309 N.E.2d 915 (1974), paragraph one of the syllabus, citing *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.E.2d 530 (1972). "'[A] trial court is obligated,' that is, has an affirmative duty, 'to engage in a dialogue with the defendant which will inform [him] of the nature of the charged offenses, any 'included' defenses, the range of possible punishments, any possible defenses, and any other facts which are essential for a total understanding of the situation.'" *State v. Gabel*, 11th Dist. Ashtabula No. 2008–A–0076, 2009–Ohio–3792, ¶ 23. (Citation omitted).

{¶27} "A reviewing court must apply a totality of the circumstances test to balance the defendant's right to counsel, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), against the trial court's need for the efficient and effective administration of criminal justice. *United States v. McMann* (C.A.2, 1967), 386 F.2d 611." *State v. Wagner,* 88 Ohio App.3d 27, 31, 623 N.E.2d 104 (4th Dist. 1993). "Moreover, a defendant may not be permitted to be reasonably perceived as taking advantage of the trial court by claiming his right to counsel in order to frustrate or delay the judicial process." *State v. Hook*, 33 Ohio App.3d 101, 103, 514 N.E.2d 721 (10th Dist.1986), citing *State v. Wellman*, 37 Ohio St.2d 162, 66, 309 N.E.2d 915 (1974). "Thus, when a defendant refuses to take effective action to obtain counsel, and on the day of trial requests a continuance in order to delay the trial, the court may, under proper conditions, be permitted to infer a waiver of the right to counsel." *Id.* citing *United States v. Terry,* 449 F.2d 727 (5th Cir.1971); *United States v. Hollis,* 450 F.2d 1207 (5th Cir.1971); and *United States v. Leavitt.*, 608 F.2d 1290 (9th Cir.1979). "To ascertain whether a waiver may be

10

inferred, the court must take into account the total circumstances of the individual case including the background, experience, and conduct of the accused person." *Id.* citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); and *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). If the trial court makes the proper inquiries and warnings to an appellant "of the consequences of proceeding unrepresented, and appellant nonetheless chose to proceed without defense counsel in an effort to delay, then appellant's actions could have constituted an implicit waiver of his right to counsel." *State v. Hayes*, 7th Dist. Mahoning No. 98CA130, 2001 WL 1262455, *3 (Aug. 14, 2000).

{¶28} The circumstances show that the court had sufficient colloquies with Appellant advising her that it would be in her best interest to be represented by counsel on, at least, February 27, 2020, August 28, 2020, August 3, 2021, and January 19, 2022. The court also explained the charges against her and the possible penalties if she were found guilty. The court even appointed multiple attorneys to represent her. Appellant rejected appointed counsel when she replaced the first with retained counsel and terminated the second by filing a pro se notice of appearance on June 2, 2021. Appellant had from September 2018 until January 2022 to retain counsel, but she failed to do so. She even failed to complete the paperwork to enable the public defender to evaluate her eligibility for his services. The court told Appellant twelve days before trial that he would "entertain" a motion to continue if she hired an attorney. The court properly warned Appellant of the consequences of proceeding unrepresented and appointed two attorneys to represent her. She had been found competent to stand trial and not indigent. She had two and a half years to retain counsel, and then claimed that she had successfully

11

removed her case to federal court (without substantiation.) Only then did she say she did not want to represent herself on the day of trial. Under the circumstances, considering Appellant's conduct throughout the entire proceedings, and in the interest of the trial court's need for the efficient and effective administration of criminal justice, we find that Appellant voluntarily waived her right to counsel by inference.

**{¶29}** We further acknowledge that Crim.R. 44(C) requires "waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing." The trial court's failure to obtain a written waiver of counsel in this instance does not stand as an impediment to, nor does it negate that Appellant's own actions implied her waiver of counsel. *See State v. Hook,* 33 Ohio App.3d 101, 103, 514 N.E.2d 721 (10th Dist. 1986) (Holding that waiver can be inferred by a defendant's actions where there is not a written or oral waiver of counsel included in the record).

**{¶30}** Appellant also contends that the trial court erred by not staying the trial after it commenced to conduct another competency evaluation.

**{¶31}** R.C. 2945.37(B) provides that if a defendant's competency is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion.

**{¶32}** In her brief, Appellant alleges multiple instances that she argues demonstrate that she did not understand the proceedings. Appellant specifically contends that her competency was raised after the trial commenced because she had listed courthouse staff as witnesses (alleging they had "cut and pasted to the docket"), she constantly brought up a prior case's validity in which she was the defendant, and

12

because the state noted in its closing argument that much of what Appellant said was "irrelevant." We cannot find that any of these instances raises Appellant's competency to stand trial as an issue. After reviewing the record, each instance Appellant lists were common errors associated with laypersons representing themselves. The court did not abuse its discretion by not staying the trial after it commenced to conduct another competency evaluation.

{¶33} Appellant's second assignment of error is without merit.

{¶34} Third assignment of error: Counsel of record at the time of the competency hearing was ineffective for failure to meet with Appellant, obtain an independent psychological evaluation of Appellant for competency and/or other potential psychological issues as well for failure to object to the unorthodox competency proceedings, implicating plain error; prior counsel ineffective as well on related issues.

{¶35} Under this assignment, Appellant argues multiple claims that her "counsel of record" at the time of the competency proceedings was ineffective. Appellant did not have any counsel of record at that time and filed a notice of appearance to notify the court that she would be representing herself at the competency hearing.

{¶36} Appellant's third assignment of error is without merit.

{¶37} Fourth assignment of error: The trial court erred and imposed a sentence clearly and convincingly contrary to law, by not granting a sentence of community control to Appellant based on her having no prior record and/or apparent mental health/competency issues, and instead a sentence of 30 months of incarceration.

{¶38} Appellant asserts that the trial court erred by sentencing her without a pre-sentence investigation.

13

Case No. 2022-G-0027

**{¶39}** "Crim.R. 32.2 requires a pre-sentence investigation only before granting probation or community control sanctions." *State v. Wise*, 5th Dist. Coshocton No. 2021CA0001, 2021-Ohio-3190, ¶ 36, citing *State v. Cyrus*, 63 Ohio St.3d 164, 166, 586 N.E.2d 94 (1992). Where probation or community control sanctions are not imposed, the rule does not apply and a pre-sentence investigation is not required. *Id.*

**{¶40}** Appellant was not sentenced to probation or community control. A pre-sentence investigation was not required. *Id.*

**{¶41}** Appellant next contends that the sentencing court should have weighed mitigating factors differently and sentenced her to community control.

**{¶42}** "A trial court is not required to give any particular weight or emphasis to a given set of circumstances; it is merely required to consider the statutory factors in exercising its discretion." *State v. Delmanzo*, 11th Dist. Lake No. 2007-L-218, 2008-Ohio-5856, ¶ 23. An appellate court is without authority to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12. *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649 at ¶ 42. A sentencing court fulfills its duty when it states that it has considered the factors under R.C. 2929.11 and R.C. 2929.12. *State v. DeLuca*, 11th Dist. Lake No. 2020-L-089, 2021-Ohio-1007, ¶ 18.

**{¶43}** This court is without authority to independently weigh mitigating factors. The sentencing court fulfilled its duty by stating at sentencing and in its judgment entry that it considered all factors under R.C. 2929.11 and R.C. 2929.12.

**{¶44}** Appellant's fourth assignment of error is without merit.

**{¶45}** The judgment of the Geauga County Court of Common Pleas is affirmed.

14

Case No. 2022-G-0027

MATT LYNCH, J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2022-G-0027